**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, 8TH Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| YANETH GARCIA, *on behalf of herself,*<br>*FLSA Collective Plaintiffs, and the Class,*<br><br>    Plaintiff,<br><br>  v.<br><br>DIAMONDROCK TIMES SQUARE TENANT, LLC<br>    d/b/a PAUL'S ON TIME SQUARE,<br>MASTERPIECE CATERERS CORP.<br>    d/b/a SKY 55 BAR & GRILL,<br>    d/b/a CAFÉ 55,<br>VIVO BAYSIDE CORP.<br>    d/b/a VIVO BAYSIDE,<br>NN PIZZA CORP.<br>    d/b/a PIZZA FACTORY,<br>UNCLE PAUL'S PIZZA & CAFE INC.<br>    d/b/a UNCLE PAUL'S PIZZA,<br>NEAT KRKUTI<br>    a/k/a NICK KRKUTI,<br>ABIDIN REDZIC<br>    a/k/a DINO REDZIC, and<br>PASKO NICAJ<br>    a/k/a PAUL NICAJ,<br><br>    Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

---

Plaintiff, YANETH GARCIA ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, DIAMONDROCK TIMES SQUARE TENANT LLC, MASTERPIECE CATERERS CORP., VIVO BAYSIDE CORP., NN PIZZA CORP., and UNCLE PAUL'S PIZZA & CAFE INC. ("Corporate Defendants"), NEAT KRKUTI, ABIDIN REDZIC, and PASKO NICAJ (the "Individual Defendants," and together with Corporate Defendants, "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, for all hours worked due to timeshaving; (2) liquidated damages; and (3) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, for all hours worked due to the timeshaving; (2) unpaid spread of hours premiums; (3) late payment of wages; (4) liquidated damages; (5) statutory penalties due to WTPA violations; and (6) attorneys' fees and costs.

3.      Plaintiff brings additional claims, on behalf of herself and a subclass of employees, pursuant to New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL") and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), due to the deprivation of her and Subclass members' statutory rights caused by Defendants' discrimination due to (i) their real or perceived immigration status; (ii) alienage/citizenship status; (iii) race; and (iv) national origin, in violation of the NYSHRL and NYCHRL. For these violations, Plaintiff and Subclass Members are entitled to recover from

2

Defendants: (1) economic damages, (2) compensatory damages, (3) punitive damages, (4) damages for egregious emotional distress, and (5) attorneys' fees and costs.

4.    Plaintiff additionally alleges, on an individual basis, that Defendants unlawfully retaliated against her, in violation of the FLSA and NYLL, and seeks to recover from Defendants: (1) economic damages, (2) emotional distress damages, (3) punitive damages, and (4) attorneys' fees and costs.

5.    Plaintiff further alleges that pursuant to Internal Revenue Code, 26 U.S.C. § 7434, she and others similarly situated are entitled to damages and fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

6.    Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contribution Act ("FICA"). Plaintiff also alleges that, in retaining those sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

## **JURISDICTION AND VENUE**

7.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

8.    Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

9.      Plaintiff YANETH GARCIA is a resident of Queens County, New York.

10.     Defendants own and operate restaurants at the following locations in New York City:

    a)  Paul's on Times Square, 136 W 42nd St, New York, NY 10036;

    b)  Sky 55 Bar and Grill, 55 Water St, New York, NY 10041;

    c)  Café 55, 55 Water St, New York, NY 10041;

    d)  Vivo Bayside, 201-10 Cross Island Pkwy, Queens, NY 11360;

    e)  Pizza Factory, 30-30 47th Ave, Long Island City, New York, 11101; and

    f)  Uncle Paul's Pizza, 70 Vanderbilt Ave, New York, NY 10017;

(collectively, the "Restaurants").

11.     Corporate Defendants operate or operated the Restaurants as a single integrated enterprise, under the control of their owners, Individual Defendants. Specifically, Corporate Defendants are engaged in related activities, share common ownership and have a common business purpose:

    a)  All the Restaurants are owned and operated by the same management: NEAT ("NICK") KRKUTI, ABIDIN ("DINO") REDZIC, PASKO ("PAUL") NICAJ;

    b)  The website of Paul's on Times Square (https://paulson42.com/) states that the restaurant is "Owned by Paul Nicaj, Nick Krkuti and Celebrity Chef Dino Redzic". *See* **Exhibit A**;

    c)  An article on The Knot additionally states that ABIDIN REDZIC owns Paul's on Times Square and has partnered with PAUL NICAJ and NICK KRKUTI to lead Uncle's Paul's Pizza. *See* **Exhibit B**;

d) The website of MASTERPIECE CATERERS (www.masterpiececaterers.com) lists Sky 55 Bar and Grill, 55 Water St (Café 55), and VIVO! (Vivo Bayside), among others. It also lists Individual Defendant PAUL NICAJ as one of the owners. *See* **Exhibits C, D**;

e) The liquor licenses of Sky 55 Bar and Grill, Café 55, and Vivo Bayside list PASKO NICAJ as a principal. *See* **Exhibit E**;

f) The website of Pizza Factory (https://pizzafactoryny.com/) lists "Chef Dino" under their "About Us" section. *See* **Exhibit F**;

g) Pizza Factory's liquor license lists ABIDIN REDZIC and NEAT KRKUTI as principals. *See* **Exhibit G**;

h) ABIDIN REDZIC's LinkedIn profile lists him as a "chef owner" of Uncle Paul's Pizza and Paul's on Times Square. *See* **Exhibit H**;

i) Uncle Paul's Pizza's liquor license lists PASKO NICAJ and ABIDIN REDZIC as principals. *See* **Exhibit I**; and

j) Employees are interchangeable among the Restaurant locations, as Plaintiff witnessed her co-worker Reynaldo [LNU] being transferred by Defendants to Uncle Paul's Pizza from Paul's on Times Square.

12.     Although Plaintiff did not work at all of the Restaurants, all Restaurants are appropriately named in this Complaint through the relevant Corporate Defendants described above. Because the Restaurants share the same illegal wage and hour policies, the Restaurants and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the Plaintiff, FLSA Collective Plaintiffs, and Class Members for whom Plaintiff seeks to represent.

13.    Corporate Defendant DIAMONDROCK TIMES SQUARE TENANT LLC ("Paul's on Times Square") is a foreign limited liability company organized under the laws of the State of Delaware, with a principal place of business located at 136 W 42nd St, New York, NY 10036 and an address for service of process located at 28 Liberty St, New York, NY 10005.

14.    Corporate Defendant MASTERPIECE CATERERS CORP ("Sky 55 Bar and Grill" and "Café 55") is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 55 Water St, New York, NY 10041 and an address for service of process located at c/o Sacco & Fillas, LLP, 141-07 20th Ave, Whitestone, NY 11357.

15.    Corporate Defendant VIVO BAYSIDE CORP ("Vivo Bayside") is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at c/o Gieto Nicaj, 46 Langdon Terrace, Bayside, NY 10708.

16.    Corporate Defendant NN PIZZA CORP ("Pizza Factory") is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 30-30 47th Ave, Long Island City, New York 11101 and an address for service of process located at c/o Leonard M. Fogelman, Esq., 305 Madison Ave, New York, NY 10165.

17.    Corporate Defendant UNCLE PAUL'S PIZZA & CAFÉ INC ("Uncle Paul's Pizza") is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 70 Vanderbilt Ave, New York, NY 10017.

18.    Individual Defendants NEAT KRKUTI, ABIDIN REDZIC, and PASKO NICAJ are partners in co-owning and co-operating all Corporate Defendants and do business together in the food and entertainment industry.

19.     Individual Defendant NEAT KRKUTI is a co-owner of the Corporate Defendants. At all relevant times, NEAT KRKUTI exercised direct and actual control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class Members.  At all relevant times, NEAT KRKUTI had and actually exercised the power and authority to directly (i) fire and hire employees, (ii) determine employees' rates and methods of pay, (iii) determine employees' work schedules, and (iv) otherwise affect the quality of employment of all employees, including Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all times, employees of each of the Corporate Defendants could complain to NEAT KRKUTI directly regarding any of the terms of their employments, and NEAT KRKUTI would have the authority to directly change the quality and terms of employees' employments. At all relevant times, NEAT KRKUTI also directly reprimanded employees who he observed misbehaving or failing to perform their duties correctly. At all relevant times, NEAT KRKUTI exercised direct and actual functional control over the business and financial operations of the Corporate Defendants.

20.     Individual Defendant ABIDIN REDZIC is a co-owner of the Corporate Defendants. At all relevant times, ABIDIN REDZIC exercised direct and actual control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class Members.  At all relevant times, ABIDIN REDZIC had and actually exercised the power and authority to directly (i) fire and hire employees, (ii) determine employees' rates and methods of pay, (iii) determine employees' work schedules, and (iv) otherwise affect the quality of employment of all employees, including Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all times, employees of each of the Corporate Defendants could complain to ABIDIN REDZIC directly regarding any of the terms of their employments, and ABIDIN REDZIC would have the authority to directly change the quality and terms of employees' employments. At all relevant times, ABIDIN REDZIC also

7

directly reprimanded employees who he observed misbehaving or failing to perform their duties correctly. At all relevant times, ABIDIN REDZIC exercised direct and actual functional control over the business and financial operations of the Corporate Defendants.

21.     Individual Defendant PASKO NICAJ is a co-owner of the Corporate Defendants. At all relevant times, PASKO NICAJ exercised direct and actual control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class Members.  At all relevant times, PASKO NICAJ had and actually exercised the power and authority to directly (i) fire and hire employees, (ii) determine employees' rates and methods of pay, (iii) determine employees' work schedules, and (iv) otherwise affect the quality of employment of all employees, including Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all times, employees of each of the Corporate Defendants could complain to PASKO NICAJ directly regarding any of the terms of their employments, and PASKO NICAJ would have the authority to directly change the quality and terms of employees' employments. At all relevant times, PASKO NICAJ also directly reprimanded employees who he observed misbehaving or failing to perform their duties correctly. At all relevant times, PASKO NICAJ exercised direct and actual functional control over the business and financial operations of the Corporate Defendants.

22.     At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the NYLL and regulations thereunder.

23.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

24.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt, front-of-house and back-of-house employees (including, but not limited to, servers, bussers, bartenders, food runners, delivery persons, cashiers, porters, cooks, line-cooks, food preparers, hostesses, stock persons, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

25.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, in the form of unpaid wages, including overtime, due to timeshaving. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

26.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

27.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt, front-of-house and back-of-house employees (including, but not limited to, servers, bussers, bartenders, food runners, delivery

persons, cashiers, porters, cooks, line-cooks, food preparers, hostesses, stock persons, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

28.    The Class Members are readily ascertainable. The number and identity of Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23. Plaintiff is a member of the Class.

29.    The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

30.    The Class also includes a subclass of employees defined as all non-exempt employees who, during the relevant statutory period, (1) were of Hispanic descent, (2) were immigrants and/or were perceived as such, and (3) worked under the supervision of Individual Defendant NEAT KRKUTI (the "Subclass" or "Subclass members"). Plaintiff is a member of both the Class and Subclass. Manager NEAT KRKUTI subjected every member of the Subclass to the same discriminatory policies.

31.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices

by Defendants, as alleged herein, of Defendants' (1) failure to pay proper wages, including overtime, due to timeshaving; (2) failure to pay spread of hours premiums; (3) failure to compensate on a timely manner in accordance with the NYLL; (4) failure to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law, and (5) failure to provide proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures of Defendants.

32.     With regard to the Subclass, Defendants subjected Plaintiff and the Subclass to discriminatory policies due to (i) their real or perceived immigration status; (ii) alienage/citizenship status; (iii) race; and (iv) national origin, in violation of the NYSHRL and NYCHRL.

33.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

34.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

35.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

36.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

> a)  Whether Defendants employed Plaintiff and the Class within the meaning of the New York Labor Law;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d)  Whether Defendants properly notified Plaintiff and the Class Members of their regular and overtime hourly rates;

e)  Whether Defendants properly compensated Plaintiff and Class Members for all hours worked;

f)  Whether Defendants properly paid Plaintiff and Class Members all wages owed, including overtime, due to a policy of timeshaving;

g)  Whether Defendants properly paid Plaintiff and Class Members their spread of hours premiums for a spread in excess of ten (10) hours, as required under the NYLL;

h)  Whether Defendants properly paid Plaintiff and Class Members in a timely manner as required by NYLL § 190;

i)  Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law;

j)  Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law; and

k) Whether Defendants discriminated against Subclass members due to their (1) Hispanic descent, and/or (2) immigrant (or perceived immigrant) status.

**STATEMENT OF FACTS**

37.    In or around April 2022, Plaintiff was hired by Defendants to work as a dishwasher, then three (3) months later, Plaintiff was transferred to work as a food preparer at Defendants' Paul's on Times Square located at 136 W 42nd St, New York, NY 10036. Plaintiff's employment with Defendants ended in or around April 2024, when she complained about her wages, as detailed below.

38.    At the beginning of her employment until July 2022, Plaintiff worked seven (7) days per week for a total of seventy (70) hours per week.

39.    From July 2022 until the end of her employment, Plaintiff's typical schedule was five (5) days a week, with a scheduled start time anytime between 2:00 to 4:00 p.m., and a scheduled end time of 11:00 p.m. Thus, Plaintiff worked a total number of hours ranging anywhere between thirty-five (35) hours and forty-five (45) hours a week. However, Plaintiff's schedule often varied depending on Defendants' operational needs, and Plaintiff was either required to: (i) start work earlier at anytime between 11:00 a.m. and 12:00 p.m., with the same end time of 11:00 p.m.; or (ii) to work an additional one (1) day a week – on those weeks, Plaintiff worked anywhere between forty-two (42) hours to fifty-four (54) hours. For instance, on the week of 09/04/23–09/10/23, Plaintiff worked six (6) days for a total of 43.02 hours. Similarly, FLSA Collective Plaintiffs and Class Members were required to work shifts of similar lengths and were likewise required to work an addition day at least once a week or start work earlier than their scheduled shifts.

40.    In addition to her scheduled shifts, Plaintiff was required to stay past the end of her shift for one (1) hour, for at least twice (2) a week, to continue working. Defendants did not compensate Plaintiff for these hours. FLSA Collective Plaintiffs and Class Members was similarly required to work off-the-clock. Besides working off-the-clock, Plaintiff, FLSA Collective Plaintiffs and Class Members were deducted an additional three (3) to four (4) hours **additional hours** from their paychecks.

41.    From the start of her employment to in or around July 2023, Plaintiff was paid by Defendants at the New York State minimum hourly rate of fifteen dollars ($15.00) per hour. From in or around July 2023 until her termination, Plaintiff was compensated at an hourly rate of seventeen dollars ($17.00) per hour. Plaintiff was always paid by Defendants in the form of checks and on a weekly basis. At all relevant times, Defendants paid FLSA Collective Plaintiffs and Class Members at similar hourly rates by weekly checks.

_Timeshaving Claims:_

42.    Throughout Plaintiff's employment with Defendants, Plaintiff was not properly compensated for all hours worked due to Defendants' policy of timeshaving. Due to Defendants' operational needs, Plaintiff would work beyond the end of her scheduled shift for an additional one (1) hour, for two (2) times a week. Although Plaintiff worked additional hours post-shift, Plaintiff's direct supervisors, Individual Defendants NEAT KRKUTI and ABIDIN REDZIC, instructed her to clock-in and clock-out at the start and end of her scheduled shifts **using a punch machine**. As a result, Plaintiff engaged in work for around two (2) hours a week, which were off-the-clock and not compensated by Defendants. **Furthermore, Plaintiff sometimes noticed how the punch machine failed to log in the extra hours Plaintiff worked beyond her scheduled shifts.** Given that Plaintiff was often scheduled to work in excess of forty (40) hours a week, the

majority of the timeshaved hours would have been overtime hours. Through these unlawful policies, Defendants ordered Plaintiff, FLSA Collective Plaintiffs, and Class Members to work off-the-clock and failed to compensate them for all hours worked outside of their schedules.

43.    In addition to working off-the-clock, Plaintiff, FLSA Collective members and Class members noticed that on certain weeks, **they were timeshaved additional hours on** their paychecks with no justification from Defendants. For instance, in the week of 5/1/23–5/6/23, Defendants compensated Plaintiff a total of $613.28 for 40.59 hours. However, Plaintiff actually worked for at least 47.88 hours, which is seven (7) more hours than the stated number of hours she was paid. Had Plaintiff been paid for all hours worked, she would have received a total of $792.38 (40 hours at $15.00 = $600, and 7.88 hours at $22.50 = $177.30) accordingly. On most other weeks between 2023 and 2024, such as the pay periods between 9/11/23 and 10/15/23 and 3/4/24 and 4/7/24, Plaintiff was consistently timeshaved anywhere between 0.13 to 0.39 or with an average of 0.27 hours per week. Similarly, FLSA Collective Plaintiffs and Class Members had hours deducted from paychecks with no explanation.

44.    Thus, Plaintiff was timeshaved approximately five (5) to six (6) hours a week, in the form of: (i) work done off-the-clock, and (ii) unpaid wages for all hours. Defendants similarly failed to compensate FLSA Collective Plaintiffs and Class Members for all hours worked.

45.    At all relevant times, Defendants knowingly and willfully subjected Plaintiff, FLSA Collective Plaintiffs and Class Members to a policy of timeshaving, in violation of the FLSA and the NYLL.

*Unpaid Spread of Hours Premiums Claims:*

46.     At all relevant times, Defendants intentionally and willfully subjected Plaintiff and Class Members to a policy of failing to pay them spread of hours premiums for their days worked with a spread of more than ten (10) or more hours, in violation of the NYLL.

47.     Depending on Defendants' operational needs, Plaintiff occasionally worked shifts exceeding a spread of ten (10) hours. As stated earlier, Defendants sometimes required Plaintiff to arrive at work between 11:00 a.m. and 12:00 p.m. before the start of Plaintiff's scheduled shift. For instance, on 4/10/24, Plaintiff clocked in at 11:37 a.m. and clocked out at 11:25 p.m., culminating in a shift lasting over ten (10) hours. However, Plaintiff was not compensated for any spread of hour premiums.

48.     Plaintiff would have also been owed spread of hour premiums for workdays in which she worked for more than ten (10) hours in total, given that (i) Plaintiff worked at least nine (9) hours on 6/6/23, 12/14/23 and 4/13/24, and (ii) she was timeshaved an additional one (1) hour post-shift for off-the-clock work.

49.     Class Members were similarly regularly required by Defendants to work shifts with a spread of ten (10) or more hours but not paid any spread of hour premiums.

50.     Despite requiring Plaintiff and Class Members to work shifts with a spread of ten (10) or more hours, Defendants always failed to pay spread of hours premiums to Plaintiff and Class Members for these work shifts.

51.     Defendants' failure to pay spread of hours premiums to Plaintiff and Class Members was clearly intentional. Defendants knew Plaintiff and Class Members were working shifts lasting up to ten (10) or more hours because Defendants were the ones to require such

amounts of work. Despite this, Defendants intentionally disregarded their requirement to pay spread of hours premiums to Plaintiff and Class Members for these shifts.

*Late Payment Claims:*

52.    Under NYLL § 191(1)(a)(i), Defendants were required to compensate Plaintiff all wages due within seven (7) days at the end of the week which they were earned.

53.    Plaintiff is a manual worker entitled to weekly compensation under the definition of NYLL § 190, as she has spent more than 25% of her working time performing physical labor. Throughout her employment, Plaintiff's duties primarily involved physical labor, such as, but not limited to: (i) washing dishes, (ii) preparing salads, and (iii) cooking pizzas.

54.    Despite being a manual worker, Plaintiff was not fully compensated on a weekly basis. As stated earlier, Plaintiff noticed varying amounts of hours being timeshaved, such as any amount **between 0.03 to more than 20 hours** deducted from her paycheck, **specifically between 2023 and 2024**. When Plaintiff complained about the discrepancies between her actual hours worked and the checks she received, Defendants would issue an additional check a few weeks after her complaint. For instance, sometime in or around June 2023, Plaintiff received an additional check for $270.00, along with her corresponding paycheck for that week. **Even if Plaintiff had ultimately received payment for timeshaved hours several pay periods later only upon her complaint, those late payments are still not enough to cover all hours deducted from her paycheck.** The missing hours that Plaintiff was not compensated for, were not paid within the seven (7) days at the end of the week which they were earned, constituting a violation under the NYLL.

55.     Defendants knowingly and willfully operated their business with a policy of failing to pay wages on a timely basis, within the seven (7) days at the end of the week which they were earned, in violation of the FLSA and the NYLL.

*Fraudulent Filings Claims:*

56.     At all relevant times, Defendants intentionally and willfully subjected Plaintiff and Class Members to (i) a policy of filing fraudulent tax information on their behalf, in violation of FICA, and (ii) policy of unjustly enriching themselves at the expense of Plaintiff and Class Members, in violation of New York law.

57.     At all relevant times, Defendants had a policy of paying Plaintiff and Class Members in both cash and checks.

58.     Defendants failed to properly record, account for, and report to the IRS all monies paid to Plaintiff and Class Members. In failing to account for these monies in their IRS filings, Defendants failed to file proper W-2s in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable for statutory penalties for each Class Member for each fraudulent filing, which would have to be at least once a year.

*Breach of Contract and Unjust Enrichment Claims:*

59.     In violating the Internal Revenue Code by failing to provide W-2 Forms. Defendants also breached their contract with Plaintiff and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

60.     Defendants also unjustly enriched themselves at the expense of Plaintiff and Class Members by retaining monies that should have been remitted to the IRS on behalf of Plaintiff and Class Members.

61.    As a result, Plaintiff and Class Members will either (1) be liable to the IRS for employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

62.    The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Class Members 7.65% of all their earnings from Defendants beginning six (6) years prior to the filing of this Complaint.

63.    Defendants are liable to Plaintiff and Class Members for failing to pay FICA taxes for the wages earned by Plaintiff and Class Members.

*WTPA Violation Claims:*

64.    At all relevant times, Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

65.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

66.    Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.,* 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time actually worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement

should include every hour actually 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours actually worked") (emphasis added).

67.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs*., 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

68.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing proper rates of pay, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage

notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

69.     Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the proper rates of pay and actual hours worked by Plaintiff and Class Members, as required by law, Defendants would have had to either (a) increase the wages to correspond to the proper rates of pay and hours of work that Plaintiff and Class Members were legally entitled to; or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the proper rates of pay and hours of work that Plaintiff and Class Members were legally entitled to. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

70.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

71.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

72.     The direct effect of understating the proper hourly rate of employees is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846

(Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

73.    The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

74.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, *4 (S.D.N.Y. July 14, 2022)).

75.    Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

76.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

77.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees as well as merely misreported their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that

"it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff

and Class Members lost benefits by virtue of how Defendants reported their income, and how

Defendants reported employees' income was the direct outcome of the inaccuracies in employees'

wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting

requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

78.    Whether or not any Class Members are presently eligible for social security

benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the

United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this

requirement and therefore are entitled to keep their Social Security accounts accurate.").

79.    The *Calderon* court stressed that an employee's interest in ensuring that an

employer properly report the employee's income is amplified by the difficulty of persuading the

government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively
> depends on reports that employers send to the government. A worker who seeks
> credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4),
> which will be hard to carry if the employer has not furnished the customary
> documentation. The government believes employers who report earnings, because
> these reports are costly to make--they entail paying a substantial tax. The
> government tends not to believe undocumented claims by employees, because these
> claims are essentially costless yet could establish entitlement to large pensions or
> disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets
> make the proper reports of their income. *Id.*

80.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class

Members cannot even attempt to have their earnings report corrected because Defendants *did*

report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff

and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security

eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the

wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect

to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S.

Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

81.    Defendants knowingly and willfully operated their business with a policy of failing

to provide Plaintiff and Class Members with wage notices and accurate wage statements, in

violation of the NYLL.

*Plaintiff's and Subclass Members' Discrimination Claim:*

82.    Plaintiff and Subclass Members are of Hispanic descent and/or have a perceived

immigrant status. Defendants' Paul's on Times Square is owned and managed by Individual

Defendants, who are all Albanian.

83.    Throughout their employment, Plaintiff and Subclass Members were subject to

discrimination and a hostile work environment based on their race, national origin and immigration

status.

84.    Throughout Plaintiff's employment by Defendants, Defendants perceived that

Plaintiff was not a U.S Citizen or permanent resident. Individual Defendant NEAT KRKUTI often

reminded Plaintiff of her perceived immigrant status, by frequently threatening to call the police

and deport her.  Whenever Plaintiff raised complaints about being underpaid, Individual Defendant

NEAT KRKUTI would threaten Plaintiff by responding, "you're illegal here" and "I can deport

you." For any small inconveniences Plaintiff made in the workplace, Individual Defendant NEAT

KRKUTI would often scream out "You stupid immigrant!" to Plaintiff. Whenever Plaintiff tried

to complain about the discrepancy between her paycheck and her actual hours worked, Defendants

would also threaten to "expose" her immigration status to the police. These actions created a hostile

work environment for Plaintiff.

85.     Individual Defendants NEAT KRKUTI, also discriminated against Plaintiff and Subclass members for not being native English speakers and for their Hispanic descent. Managers would often degrade the entire kitchen staff, including Plaintiff, comprised of twelve (12) Hispanic workers working as dishwashers, food preparers, cooks, among others, by yelling: "Hispanics are worthless". Plaintiff observed Individual Defendant NEAT KRKUTI staring at the cameras and waiting until Plaintiff or any other Hispanic co-workers took a moment to check their phones. The managers would then take a photo and claim that Plaintiff and other Hispanic employees were "always on [their] phone and not working", giving them an additional reason to berate the Hispanic employees. Furthermore, Defendants would not promote Hispanic employees and relegate them to low-level back-of-house duties and call them derogatory names. On the other hand, Albanian or white staff would be given prime front-of-house jobs such as server, even when they had no hospitality experience.

86.     Plaintiff and Subclass Members were subject to Defendants' multiple adverse actions originating in her real or perceived immigrant status and national origin, including but not limited to: (1) threats of deportation, (2) discriminatory work environment, (3) verbal harassment, and (4) significantly decreased opportunities for career advancement.

87.     Upon information and belief, owner and Individual Defendant NEAT KRKUTI engaged in discriminatory treatment of Plaintiff and Subclass Members, who are vulnerable persons protected under the NYSHRL and the NYCHRL due to their perceived immigration status, and/or Hispanic descent.

88.     As a result of Defendants' discriminatory conduct, Plaintiff sustained injury, including economic damages, past and future egregious emotional distress, and the costs of bringing this action.

*Plaintiff's Individual Retaliation Claims*

89.    Throughout her employment, Plaintiff made multiple complaints about the discrepancies between her actual worked hours and the checks she received. Plaintiff made such complaints to Individual Defendants NEAT KRKUTI and ABIDIN REDZIC. When Plaintiff made her final complaint to Defendants in or around April 2024, Individual Defendant NEAT KRKUTI and ABIDIN REDZIC fired Plaintiff in retaliation.

90.    Defendants' sudden termination of Plaintiff was clearly for retaliatory reasons arising from Plaintiff's complaint about underpayment. Any other reasons for Plaintiff's termination are clearly pretextual.

91.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of subjecting Plaintiff to discrimination and retaliation.

92.    As a result of Defendants' retaliatory conduct, Plaintiff suffered from lost earnings and egregious emotional distress.

93.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT
**(Brought on Behalf of Plaintiff and FLSA Collective Plaintiffs)**

94.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

95.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the

FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

96.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

97.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

98.     At all relevant times, Defendants had a policy and practice of failing to pay wages to Plaintiff and FLSA Collective Plaintiffs for all regular and overtime hours worked due to timeshaving.

99.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

100.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, when Defendants knew or should have known such was due.

101.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

102.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

103.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to timeshaving, and liquidated damages.

104.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

### VIOLATION OF THE NEW YORK LABOR LAW
**(Brought on Behalf of Plaintiff and Class Members)**

105.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

106.     At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the NYLL, §§2 and 651.

107.     At all relevant times, Defendants had a willful policy and practice of refusing to pay Plaintiff and Class Members for all hours worked, including overtime, due to Defendants' policy of timeshaving, in direct violation of the NYLL.

108.     At all relevant times, Defendants willfully and knowingly failed to compensate Plaintiff and Class Members with their spread of hour premiums for their shifts worked in excess of ten (10) hours, in direct violation of the NYLL.

109.     At all relevant times, Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them their wages within seven (7) days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

110.     Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the NYLL § 195(3).

111.    Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by the NYLL § 195(3).

112.    Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, including unpaid overtime premiums, unpaid spread of hours premiums, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to New York Labor Law.

**COUNT III**

**VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**
**(NEW YORK EXECUTIVE LAW § 296)**
**(Brought on Behalf of Plaintiff and Subclass Members)**

113.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

114.    Plaintiff and Subclass Members were employees and qualified persons within the meaning of the NYSHRL. Defendants are covered employers under the NYSHRL.

115.    In relevant part, New York Executive Law §296(1)(a) states it shall be an unlawful discriminatory practice:

> "For an employer or licensing agency, because of an individual's [...] race, creed, [...] national origin, citizenship or immigration status, [...] to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

116.    In additional relevant part, New York Executive Law §296(1)(h) states it shall be an unlawful discriminatory practice:

> "For an employer, licensing agency, employment agency or labor organization to subject any individual to harassment because of an individual's [...] race, creed, [...] national origin, citizenship or immigration status, [...] or because the individual has opposed any practices forbidden under this article [...]. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories."

117.    Furthermore, in relevant part, the New York State Executive Law § 296(7) provides that:

>  "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article."

118.    Defendants violated the New York State Human Rights Law when they discriminated and harassed Plaintiff and Subclass Members on the basis of their race, national origin and immigration status. In particular, Individual Defendants NEAT KRKUTI discriminated against Plaintiff and Subclass Members in numerous ways, including but not limited to: (i) calling them derogatory names based on their national origin and race; (ii) threatening to deport Plaintiff due to her perceived immigration status; (iii) perpetuating a hostile work environment to Subclass Members, and (iv) decreasing opportunities for career advancement.

119.    Defendants' conduct was intentional, malicious, willful, or in reckless disregard of Plaintiff's protected rights under the NYSHRL.

120.    As a result of Defendants' discriminatory conduct, Plaintiff suffered from egregious emotional distress. To this day, Plaintiff suffers from extreme anxiety and paranoia that Defendants will report her to the authorities and deport her.

121.    As a result of Defendants' unlawful employment practices under the NYSHRL, Plaintiff and Subclass Members sustained injury, including economic damages, past and future emotional distress and the costs of bringing this action.

122.    Due to Defendant's violation under the NYSHRL, Plaintiff and Subclass Members are entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices described herein; (2) economic damages; (3) compensatory damages; (4)

punitive damages; (5) damages for egregious emotional distress, and (6) attorney's expert fees and costs.

## COUNT IV

### VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW
**(NEW YORK CITY ADMINISTRATIVE CODE § 8-107)**
**(Brought on Behalf of Plaintiff and Subclass Members)**

123.    Plaintiff reallege and incorporate all the foregoing paragraphs of this Complaint as if fully set forth herein.

124.    At all relevant times herein, Plaintiff was an employee of Defendants and qualified person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

125.    In relevant part, Administrative Code of the City of New York § 8-107(1)(a) states it shall be an unlawful discriminatory practice:

"For an employer or an employee or agent thereof, because of the actual or perceived [...] race, creed, [...] national origin, [...] or immigration or citizenship status of any person: [...]

(3) To discriminate against such person in compensation or in terms, conditions or privileges of employment"

126.    Defendants violated Plaintiff's statutory protected rights under the NYCHRL, Administrative Code of the City of New York § 8-107, by discriminating against Plaintiff on the basis of her national origin and immigration status in violation of the NYCHRL, by subjecting Plaintiff to intentionally discriminatory policies as set forth above.

127.    Defendants violated the New York City Human Rights Law when they (i) discriminated against Plaintiff on the basis of Plaintiff's race, national origin and immigration status. In particular, Individual Defendants NEAT KRKUTI and ABIDIN REDZIC discriminated against Plaintiff in numerous ways, including but not limited to: (i) calling Plaintiff derogatory

names based on her national origin and race; (ii) threatening to deport Plaintiff due to her perceived immigration status; and (iii) perpetuating a hostile work environment to Hispanic staff, which Plaintiff was a member of.

128.    As a result of Defendants' discriminatory conduct, Plaintiff suffered from egregious emotional distress. To this day, Plaintiff suffers from extreme anxiety and paranoia that Defendants will report her to the authorities and deport her.

129.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYCHRL.

130.    As a result of Defendants' unlawful employment practice under the NYCHRL, Plaintiff sustained injury, including economic damages, past and future emotional distress and the costs of bringing this action.

131.    Due to Defendants' violation under the NYCHRL, Plaintiff is entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; (5) damages for egregious emotional distress; and (6) attorney's and expert fees and costs.

## COUNT V

### RETALIATION UNDER THE FAIR LABOR STANDARDS ACT
**(Brought Individually on Behalf of Plaintiff)**

132.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

133.    At all relevant times, Plaintiff was an employee of Defendants within the meaning of the FLSA, and was a person covered by and intended to benefit from the provisions of the FLSA.

134.    Section 15(a)(3) of the FLSA provides that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint […] under or related to this Act."

135.    As alleged herein, Plaintiff complained to Defendants regarding Defendants' underpayment of wages and illegal timeshaving policies. In response to such complaints, Defendants terminated Plaintiff, in violation of Section 15(a)(3).

136.    Defendants' retaliatory termination was in willful disregard of the provisions of the FLSA.

137.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff suffered damages in the form of lost earnings and emotional distress. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorneys' fees and costs, as provided under the FLSA.

## COUNT VI
## RETALIATION UNDER THE NEW YORK LABOR LAW
### (Brought Individually on Behalf of Plaintiff)

138.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

139.    At all relevant times, Plaintiff was an employee of Defendants within the meaning of the NYLL, and was a person covered by and intended to benefit from the provisions of the NYLL.

140.    Defendants willfully violated the NYLL by retaliating against Plaintiff by discharging her for making numerous complaints about Defendants' underpayment of wages and illegal policy of timeshaving.

141.    Defendants' actions constitute a violation of Section 215 of the NYLL. In relevant

part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (1) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer was engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner.

142.    Defendants' conduct was in willful disregard of the provisions of the NYLL.

143.    Plaintiff suffered economic losses and emotional and mental distress as the result of her retaliatory termination by Defendants.

144.    As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interests, attorneys' fees, and costs, as provided for under the NYLL.

## COUNT VII

## CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS UNDER 26 U.S.C. § 7434(a)
### (Brought on behalf of Plaintiff and the Class)

145.    Plaintiff realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

146.    Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other persons, such person may bring a civil action for damages against the persons so filing such returns." 26 U.S.C. § 7434(a).

147.    By purposely failing to provide Plaintiff and Class Members with accurate IRS Forms W-2s for all of the tax years during which they were employed by Defendants and failing

to properly record, account for, and report to the IRS all monies paid to Plaintiff and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

148.    Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

149.    Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

## COUNT VIII

## BREACH OF CONTRACT
### (brought individually and on behalf of the Class)

150.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows:

151.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he  duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 135-136, 773 N.E.2d 496, 500-01 (2002).

152.    When Plaintiff and Class Members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable

laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

153.    Defendants breached this duty when they decided to pay Plaintiff and Class Members by check and not file proper W-2 forms.  As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

### COUNT IX

### UNJUST ENRICHMENT
### (brought individually and on behalf of the Class)

154.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows:

155.    To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

156.    Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

157.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the IRC, the NYCHRL and the NYSHRL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid wages, including overtime, due to timeshaving, due under the FLSA and the NYLL;

d.    An award of unpaid spread of hours premiums, due under the NYLL;

e.    An award of statutory damages to Plaintiff and each Class Member under 26 U.S.C. § 7434 for each violation;

f.    Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

g.    Disgorgement from Defendants of all illegally retained sums that should have gone into FICA contributions;

h.    An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

i.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

j.      An award of liquidated and/or punitive damages as a result of Defendants' willful

        failure to pay wages pursuant to the NYLL;

k.      An award of compensatory damages, punitive damages, and damages for egregious

        emotional distress, due under the NYSHRL;

l.      An award of compensatory damages, punitive damages, and damages for

        egregious emotional distress, due under the NYCHRL;

m.      An award of economic damages, emotional distress damages, and punitive damages

        as a result of Defendants' retaliation against Plaintiff, due under the FLSA;

n.      An award of economic damages, emotional distress damages, and punitive damages

        as a result of Defendants' retaliation against Plaintiff, due under the NYLL;

o.      An award of pre-judgment and post-judgment interests, costs, and expenses of this

        action together with reasonable attorneys' and experts' fees and statutory penalties;

p.      Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

q.      Designation of this action as a class action pursuant to F.R.C.P. 23;

r.      Designation of Plaintiff as Representative of Class;

s.      Designation of Plaintiff as Representative of Subclass; and

t.      Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by

jury on all issues so triable as of right by jury.

Dated: April 29, 2025
        New York, New York

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

By:    /s/ *C.K. Lee*
       C.K. Lee, Esq.